AO106(Rev.5/85) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

Yahoo, Inc.
Internet Service Provider
xxx First Avenue
Sunnyvale, CA  94089

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT
CASE NUMBER:

(Further described below)

I ____Donya Jackson_____ being duly sworn depose and say:

I am a(n)___Special Agent with Library of Congress Office of Inspector General___ and have reason to believe
                                    (Official Title)
that ☐ on the person of or ☒ on the property or premises known as  (name, description and or location)

**Yahoo, Inc.**
**Internet Service Provider**
**xxx First Avenue**
**Sunnyvale, CA 94089**
**Account: mfb1949_20901@yahoo.com**

concerning a violation of Title _18_ United States Code, Section(s)_§ 2252A._ The facts to support a finding of
Probable Cause are as follows:

## SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.    ☒  YES    ☐  NO

_____
Catherine Connelly
Federal Major Crimes Section
(202) 616-3384

_____
Signature of Affiant
Donya Jackson, Special Agent
Library of Congress Office of Inspector General

Sworn to before me, and subscribed in my presence

_____
Date

at Washington, D.C.

_____
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF | ) | |
| YAHOO, INC. | ) | MAGISTRATE NO. |
| Internet Service Provider | ) | |
| 701 First Avenue | ) | |
| Sunnyvale, CA 94089 | ) | FILED UNDER SEAL |

<u>**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**</u>

1.   Your affiant in this matter, Donya Jackson, has been a Special Agent with the Office of the Inspector General at the Library of Congress since May, 2007. Prior to her employment with the Library of Congress, your affiant was a Special Agent with the United States Secret Service since 2000.  During your affiant's six year tenure with the U.S. Secret Service, she was assigned to the Criminal Investigation Division in Head Quarters, and the New York Electronic Crimes Task Force based out of the New York Field Office, Brooklyn NY. Your affiant has received training in the following subject areas: Basic Investigator Course, Interview and Interrogation, Undercover Computer Investigation techniques, SEARCH High Tech Crimes Investigations of Computer Crimes Course, Investigation of Online Child Exploitation course, and Search and Seizure of Electronic Evidence techniques. Your affiant has made numerous arrests and interviewed numerous victims, witnesses, and suspects.

2.   Your affiant has participated in numerous online child exploitation investigations, and undercover online investigations.

3.   This affidavit is made in support of an application for a warrant pursuant to 18 U.S.C. §§ 2703(a) and 2703(b)(A) to compel Yahoo Incorporated, a provider of electronic

communication and remote computing services, located at 701 First Avenue, Sunnyvale, CA 94089, to provide subscriber information, records, and the contents of wire and electronic communications pertaining to the account mfb1949_20901@yahoo.com. The records and other information requested are set forth in Attachment A. There is probable cause to believe that the contents of the wire and electronic communications pertaining to the subject accounts are evidence, fruits and instrumentalities of criminal violations of 18 U.S.C. Section 2252A, possession of material constituting or containing child pornography.

4. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

5. In my training and experience, I have learned that Yahoo, Inc. ("Yahoo") is a company that provides free web based Internet electronic mail ("e-mail") access to the general public, and that stored electronic communications, including opened and unopened e-mail for Yahoo subscribers may be located on the computers of Yahoo. Further, I am aware that computers located at Yahoo contain information and other stored electronic communications belonging to unrelated third parties. Accordingly, this affidavit and application for search warrant seek authorization to seize the records and information specified in Attachment A.

### Search Procedure

6. In order to facilitate seizure by law enforcement of the records and information

2

described in Attachment A, this affidavit and application for search warrant seek authorization to permit employees of Yahoo to assist agents in the execution of this warrant. In executing this warrant, the following procedures will be implemented:

a.    The search warrant will be presented to Yahoo personnel who will be directed to isolate those accounts and files described in Section II of Attachment A;

b.    In order to minimize any disruption of computer service to innocent third parties, Yahoo employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Section II of Attachment A, including an exact duplicate of all information stored in the computer accounts and files described in Section II of Attachment A;

c.    Yahoo employees will provide the exact duplicate in electronic form of the accounts and files described in Section II of the Attachment A and all information stored in those accounts and files to the agent who serves this search warrant; and

d.    Law enforcement personnel will thereafter review all information and records received from Yahoo employees to determine the information to be seized by law enforcement personnel pursuant to Section III of Attachment A.

## Use of Computers with Child Pornography

7. I have received training in computer crime investigation. I also own a computer and use computers in the course of my work in law enforcement and have personal knowledge regarding the operation of computers. Based on this training, experience, and information provided to me by other law enforcement personnel involved in this investigation, I know the following:

a.      The Internet is a global network which allows for the sharing of data across computers attached to the network.

b.      Individual users typically access the Internet through a local Internet Service Provider ("ISP") (such as "Yahoo") through a modem or other connection device, such as a cable or Digital Subscriber Line ("DSL").  When accessing the Internet, the ISP will assign each user an Internet Protocol ("IP") address, a unique number used by a computer to access the Internet. IP addresses can be dynamic, meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet.  IP addresses can also be static, whereby the user's ISP assigns the computer a unique IP address, and that same number is used by the user every time the computer accesses the Internet. I also know that Yahoo servers are not located in the District of Columbia; they are located in the State of California. Therefore, Internet communications between persons in the District of Columbia via Yahoo take place in interstate commerce.

c.      Communication via the Internet can take place through many different mediums like accessing a website or sending and receiving electronic mail, also known and referred to herein as "e-mail."  E-mail is an electronic form of communication which can contain letter-type correspondence and graphic images.  E-mail is similar to conventional paper type mail in that it is addressed from one individual to another.

d.      E-mail messages usually contain a header that gives the screen name, the identity of the Internet access provider, and the return address on the Internet of the individual who originated the message or graphic.

e.      The Internet also allows individuals to trade pictures or images, often

4

through e-mail or by downloading images from a website or another individual's computer, as described below.

(1)  Photographs and other images can be stored as data on a computer. This storage can be accomplished using a "scanner," which is an optical device that can recognize images or characters on paper and convert them to digital form by using specialized software.

(2)  After the photograph or other image has been scanned into the computer, the computer stores the data from the image as an individual "file."  Such a file is generally known as a "GIF" (Graphic Interchange Format) or "JPEG" (for the Joint Photographic Experts Group, which wrote the standard) file, recognizable by the ".gif" or ".jpg" file extensions (hereafter referred to as an "image file").

(3)  Computers are capable of displaying an image file as a facsimile of the original image on a computer screen.

(4)  Using a computer connected to a network connected to the Internet, one can transmit and receive image files between computers located in different states or countries.

(5)  An image file itself can be either a single image (one picture only, also known as a computer file), or a multiple image file (two or more pictures, usually "zipped" or compressed using a commonly available utility and recognizable by the ".zip" file extension). Multiple image files can also be placed within an executable file (recognizable by the ".exe" file extension).  When a computer runs the executable file the images can be expanded into several image files.

(6)  A computer's ability to store images in digital form makes the computer an ideal repository for child pornography.  Images can be stored internally in a computer on its "hard drive," and/or externally on "floppy" disks of several sizes and capacities, and/or externally on CDs and/or DVDs of several size and capacities and on other removable media storage devices.  A single floppy disk can store dozens of images and hundreds of pages of text.  A single CD or DVD can store hundreds of images and/or multiple videos or video clips.  The storage capacities of the electronic storage media (hard drives and floppy disks) used in home computers have grown tremendously within the last several years.  Hard drives with the capacity of a hundred gigabytes are common.  These drives can store tens of thousands of images at a very high resolution.  These images can also be stored on the computers of an Internet company hosting the particular website.

(7)  With a modem, a computer user can transport an image file from the Internet or from another user's computer to his own computer, so that the image file is stored in his computer.  The process of transporting an image file to one's own computer is called "downloading."  The user can then display the image file on his computer screen, and can "save" or retain the images on his computer for an indefinite time period.

(8)  In addition to permanently storing the downloaded image on his computer, the user may print the image file.  The finished product can appear as a magazine quality picture to be stored or distributed to other collectors.  The original image that was downloaded or transported is maintained in the computer.

(9)  With a modem, a computer user can also send an image file that is retained in his computer to another individual or to areas of the Internet where it can be accessed

6

by many other computer users.  This process of sending an image file is called "uploading."

(10)  The process of "uploading" is similar to the "downloading" process except the user is sending the computer image file to the individual or to the Internet as a whole instead of retrieving the information from another computer.

f.      Another well-known component of the Internet is the World Wide Web, or the "Web."  The Web is a collection of websites located or stored on different computers throughout the world.  Each website is identified by a unique Uniform Resource Locator ("URL"), which identifies the server on which the website information is stored.  Users access websites by typing the corresponding URL into their web browser.

### Use of the Internet and Computers for Child Pornography

8.  Based on my training, experience and conversations with other law enforcement agents, I know that computers, computer technology and the Internet have revolutionized the way in which child pornography is produced, distributed, utilized and collected.  They have revolutionized also the way in which child pornography collectors interact with each other. Child pornography formerly was produced using cameras and film (either still photography or movies).  The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images.  As a result, there were significant costs involved with the production of pornographic images.  To distribute these images on any scale also required significant resources.  The photographs were somewhat bulky and required secure storage to prevent their exposure to the public.  The distribution of these wares was accomplished through a combination of personal contact, mailings, and telephone calls.  Any reimbursement would follow these same paths.

7

9.  The development of computers and the Internet has added to the methods used by child pornography collectors to interact with and sexually exploit children and to produce and distribute child pornography.  Computers and the Internet generally serve four functions in connection with child pornography.  These are:  production, communication, distribution, and storage.

a.      Child pornographers now can produce both still and moving images directly from a common video camera.  The captured images can be edited in very similar ways to a photograph.  The image can be lightened, darkened, cropped, and manipulated in a wide variety of ways.  The producers of child pornography can also use a device known as a scanner to transfer photographs into a computer-readable format.  As a result of this technology, it is relatively inexpensive and technically easy to produce, store and distribute child pornography.  Further, it is more difficult for law enforcement to detect and investigate child pornography produced with this new technology, as opposed to methods used in the past, which required more elaborate and detectable equipment and facilities.

b.      Previously, child pornography collectors had to rely on personal contact, United States mail, and telephonic communications in order to sell, trade or market pornography.  The development of computer technology has changed that.  A modem allows any computer to connect to another computer through the use of telephone lines.  By connecting to a host computer, electronic contact can be made to numerous other computers around the world.  Once this electronic contact is established, there are numerous outlets and ways that child pornography can be distributed over the Internet.

c.      Private and/or public Internet relay chat ("IRC") channels can be and are

8

created for the purpose of sharing child pornography.  A user can log onto the IRC anonymously

and "chat" and/or trade child pornography with other users, either on an individual or group

basis.  During this type of session no identifying personal information is obvious or available.

The only identifiable or traceable information is the individual's IP address or ISP.  IRC chat

rooms are one place where pornographers meet to trade child related sexual and non-sexual

stories and trade child pornography.  In addition, "chat rooms" on ISPs like AOL can be and are

created for similar purposes.  Both types of chat rooms are places where children may be at risk

of being "lured."

       d.     Aside from the chat rooms that reside on many service providers'

networks, ISPs often allow access to "newsgroups."  Newsgroups resemble a bulletin board

system where an individual can post messages along with graphic files on a public forum.  Any

item posted in a news group can be retrieved by any other person who has access to that

particular newsgroup.  One commonality between a newsgroup posting and e-mail is that they

each often contain a message "header" that gives information about the account that originated a

particular message and/or graphic files, and the return address to respond to the poster/sender.

       e.     Internet websites also can be used to facilitate the exchange of child

pornography.  A website can house child pornography directly, allowing users who access the

website to view and download those images.  A website can also house an "Egroup," which is a

forum by which persons with shared interests in child pornography can interact in relative

privacy.  Typically, most Egroups will have a moderator, and membership in the group can be

open or by invitation only.  The members of an Egroup also typically communicate with each

other by sending an e-mail to the group, which is disseminated to all of the members.  In

9

addition, each Egroup typically has a web page that the group's members can visit to view archived postings.  E-mail messages and postings might include files that contain visual depictions and digital video clips.

f.    These communication structures are ideal for the child pornography collector.  The open and anonymous communication allows the user to locate others of similar inclination and still maintain anonymity.  Once contact has been established, it is possible to send text messages and graphic images to others.  Moreover, the child pornography collector need not use the large service providers.  Child pornography collectors can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other and to distribute pornography.  These communication links allow contacts around the world as easily as calling next door.  Additionally, these communications can be quick, relatively secure, and as anonymous as desired.  All of these advantages are well known and are the foundation of transactions between child pornography collectors.

g.    The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution of child pornography.  For example, child pornography can be transferred (via electronic mail, through file transfer protocols("FTPs") , or via newsgroup postings) to anyone with access to a computer and modem.  Because of the proliferation of commercial services that provide electronic mail service, chat services, and easy access to the Internet, the computer is a preferred method of distribution of child pornographic materials.

h.    The computer's capability to store images in digital form makes it an ideal repository for pornography.  A single floppy disk can store dozens of images and hundreds of

pages of text. The size of the electronic storage media (commonly referred to as a hard drive) used in home computers has grown tremendously within the last several years. Hard drives with the capacity of 100 gigabytes are not uncommon. These drives can store thousands of images at very high resolution. Further, magnetic storage located in host computers allows child pornographers to hide pornographic images from law enforcement. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and to save that image to storage on a host computer in another country. Only careful laboratory examination of electronic storage devices can recreate the evidence trail.

### Child Pornography Collector Characteristics

10. Based on my training and experience and conversations that I have had with other federal agents and law enforcement officers, I know that child pornography is not readily available in retail establishments. Accordingly, individuals who wish to obtain child pornography do so usually by ordering it from abroad or by discreet contact, including through the use of the Internet, with other individuals who have it available or by accessing web sites containing child pornography. Child pornography collectors often send and receive electronic mail conversing with other collectors in order to solicit and receive child pornography.

11. I know that child pornography collectors usually maintain and possess their materials (computer images, pictures, films, magazines, videotapes, correspondence, source information, etc.) in a private secure location such as their home, office, or work space. Images or videos taken off of the Internet are often stored in the hard drive of the computer or on diskettes kept in private locations near the computer such as in locked desks, shelves, contiguous work space, filing cabinets or similar items and areas in office space. These images also can be printed on

11

computer printers and maintained by child pornography collectors in paper form.  Additionally,
child pornography collectors often transfer those images to videotape, either by videotaping with
a handheld video camera the images or videos on a computer screen, or by connecting a video
cassette recorder to the computer and recording the images or videos directly.

12.    Collectors of child pornography typically retain their materials and related
information for many years.  Most collectors of child pornography seek to increase the size of
their collections in a manner similar to collectors of coins, stamps, or rare books.  Many retain
these materials, including information regarding sources, for their entire adult lives.  Moreover,
individuals who distribute and/or collect child pornography generally prefer not to be without
their child pornography for any prolonged time period.  This behavior has been documented by
law enforcement officers involved in the investigation of child pornography throughout the
world.  In addition, collectors of child pornography rarely destroy correspondence from other
collectors or distributors unless their activities are uncovered by law enforcement authorities or
others.

13.    Additionally, based on my experience and training, I know that persons who collect
and distribute child pornography often correspond and/or meet others to share information and
materials, rarely destroy correspondence from other child pornography distributors/collectors,
conceal such correspondence as they do their sexually explicit material, and often maintain lists
of names, addresses, telephone numbers and screen names of individuals with whom they have
been in contact and who share the same interests in child pornography.

14.    Based on my training and experience and my conversations with law enforcement
agents, I have also learned that:

a.      Child pornography is a permanent record of the sexual abuse of a child

victim.  Each time child pornography is reproduced, downloaded, or forwarded by an Internet

user, the victimization of the minor appearing in the pornography is perpetuated.  Such items also

are important evidence and indications of an individual whose sexual objects are children, and of

that individual's motive, intent, and predisposition to violate federal law related to the

production, possession and distribution of child pornography.  Additionally, these items lead to

the identification of child victims and other individuals engaging in similar conduct.

b.      Child pornography collectors reinforce their fantasies, often by taking

progressive, overt steps aimed at turning the fantasy into reality in some or all of the following

ways:  collecting and organizing their child-related material; masturbating while viewing the

child pornography; engaging children, online and elsewhere, in conversations, sometimes

sexually explicit conversations, to fuel and fortify the fantasy; interacting, both directly and

indirectly, with other like-minded adults through membership in organizations catering to their

sexual preference for children thereby providing a sense of acceptance and validation within a

community; gravitating to employment, activities and/or relationships which provide access or

proximity to children; and frequently persisting in the criminal conduct even when they have

reason to believe the conduct has come to the attention of law enforcement.  These are

need-driven behaviors to which the offender is willing to devote considerable time, money, and

energy in spite of risks and against self interest.  The "collection" is the best indicator that law

enforcement has of what the collector wants to do, not necessarily what he has done or will do.

The overriding motivation for the collection of child pornography may be to define, fuel, and

validate the collectors' most cherished sexual fantasies involving children.

### Yahoo, Inc.

17.  Based on my training and experience, I have learned the following about Yahoo:

a.      Yahoo is an e-mail service which is available free of charge to Internet

users.  Subscribers obtain an account by registering on the Internet with Yahoo.  Yahoo requests

subscribers to provide basic information, such as name, gender, zip code and other

personal/biographical information.  However, Yahoo does not verify the information provided;

b.      Yahoo maintains electronic records pertaining to the individuals and

companies for which they maintain subscriber accounts.  These records include account access

information, e-mail transaction information, and account application information;

c.      subscribers to Yahoo may access their accounts on servers maintained

and/or owned by Yahoo from any computer connected to the Internet located anywhere in the

world;

d.      any e-mail that is sent to a Yahoo subscriber is stored in the subscriber's

"mail box" on Yahoo's servers until the subscriber deletes the e-mail or the subscriber's mailbox

exceeds the storage limits preset by Yahoo.  If the message is not deleted by the subscriber, the

account is below the maximum limit, and the subscriber accesses the account periodically, that

message can remain on Yahoo's servers indefinitely;

e.      when the subscriber sends an e-mail, it is initiated at the user's computer,

transferred via the Internet to Yahoo's servers, and then transmitted to its end destination.  Yahoo

users have the option of saving a copy of the e-mail sent.  Unless the sender of the e-mail

specifically deletes the e-mail from the Yahoo server, the e-mail can remain on the system

indefinitely.  The sender can delete the stored e-mail message thereby eliminating it from the

14

e-mail box maintained at Yahoo, but that message will remain in the recipient's e-mail box unless the recipient deletes it as well or unless the recipient's account is subject to account size limitations;

       f.     a Yahoo subscriber can store files, including e-mails and image files, on servers maintained and/or owned by Yahoo;

       g.     a subscriber to Yahoo may not store copies on his/her home computer of e-mails and image files stored in his/her Yahoo account. The subscriber may store e-mails and/or other files on the Yahoo server for which there is insufficient storage space in the subscriber's computer and/or which he/she does not wish to maintain in the computer in his/her residence. A search of the files in the computer in the subscriber's residence will not necessarily uncover the files that the subscriber has stored on the Yahoo server;

       h.     as a federal agent, I am trained and experienced in identifying communications relevant to the crimes under investigation. The personnel of Yahoo are not. I also know that the manner in which the data is preserved and analyzed may be critical to the successful prosecution of any case based upon this evidence. Computer Forensic Examiners are trained to handle digital evidence. Yahoo employees are not. It would be inappropriate and impractical, however, for federal agents to search the vast computer network of Yahoo for the relevant accounts and then to analyze the contents of those accounts on the premises of Yahoo. The impact on Yahoo's business would be severe;

       i.     in order to accomplish the objective of the search warrant with a minimum of interference with the business activities of Yahoo, to protect the rights of the subject of the investigation and to effectively pursue this investigation, authority is sought to allow Yahoo to

make a digital copy of the entire contents of the information subject to seizure specified in

Section II of Attachment A.  That copy will be provided to me or to any authorized federal agent.

The contents will then be analyzed to identify records and information subject to seizure pursuant

to Section III of Attachment A; and

        j.     executing a warrant to search a Yahoo e-mail account requires an approach

similar to the standard approach for executing a warrant to search papers stored in a file cabinet.

Searching the subject e-mail account in this case for evidence of the target crimes will require

that agents cursorily inspect all e-mails produced by Yahoo in order to ascertain which contain

evidence of those crimes, just as it necessary for agents executing a warrant to search a filing

cabinet to conduct a preliminary inspection of its entire contents in order to determine the

documents which fall within the scope of the warrant.  In addition, keyword searches alone are

inadequate to ensure that law enforcement can discover all information subject to seizure

pursuant to Section III of Attachment A.  Keywords search text, but many common electronic

mail, database and spreadsheet applications files (which files may have been attached to

electronic mail) do not store data as searchable text.

## Stored Wire and Electronic Communication Access

    18.  Title 18, United States Code, Chapter 121, Sections 2701 through 2711, is entitled

"Stored Wire and Electronic Communications and Transactional Records Access."

        a.     Title 18, United States Code, Section 2703(a) provides, in part:

    A governmental entity may require the disclosure by a provider of
    electronic communication service of the contents of a wire or
    electronic communication, that is in electronic storage in an
    electronic communications system for one hundred and eighty days
    or less, only pursuant to a warrant issued using the procedures

described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation or equivalent State warrant. A governmental entity may require the disclosure by a provider of electronic communications services of the contents of a wire or electronic communication that has been in electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

      b.      Title 18, United States Code, Section 2703(b) provides, in part:

(1) A governmental entity may require a provider of remote computing service to disclose the contents of any electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection -

      (A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued under the Federal Rules of Criminal Procedure or equivalent State warrant...

(2) Paragraph (1) is applicable with respect to any electronic communication that is held or maintained on that service -

      (A) on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such remote computing service; and

      (B) Solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

      c.      The government may also obtain records and other information

pertaining to a subscriber to or customer of electronic communication service or remote

computing service by way of a search warrant. 18 U.S.C. § 2703(c)(1)(A). No notice to the

17

subscriber or customer is required.  18 U.S.C. § 2703(c)(3).

      d.     Title 18, United States Code, Section 2711, provides, in part:

As used in this chapter -
(1) the terms defined in section 2510 of this title have, respectively, the definitions given such terms in that section; and

(2) the term "remote computing service" means the provision to the public of computer storage or processing services by means of an electronic communications system.

      e.     Title 18, United States Code, Section 2510, provides, in part:

(8) "contents," when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication; . . .

(14) "electronic communications system" means any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications; . . .

(15) "electronic communication service" means any service which provides to users thereof the ability to send or receive wire or electronic communications; . . .

(17) "electronic storage" means --

     (A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and

     (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication.

## Summary of Investigation and Probable Cause

19.  When users sign onto the Library of Congress (LOC)computers the following banner

18

appears: "This is notice that the use of the Library's computers, terminals and associated systems for e-mail and internet access are intended for employees to assist in accomplishing their work. Such usage may be monitored or scrutinized by the Library of Congress and inappropriate usage may result in limitation or revocation of usage and/or may subject the employee to administrative or criminal penalties." This banner appears each time an employee logs onto an LOC computer.

20.  As part of an ongoing investigation into possible inappropriate or illegal use LOC computers, your affiant identified an LOC computer accessing child pornography websites through google groups.

21.  On July 9, 2007, your affiant met with representatives from the National Center for Missing and Exploited Children (NCMEC)and obtained child pornography search terms used to detect criminal activity relating to the possession and distribution of child pornography on the internet.  The terms provided by NCMEC were entered into a filter located on LOC servers and designed to track and log outgoing internet activity.

22.  One of the terms provided by NCMEC as a term commonly used in the child pornography industry is "twinks."  On September 19, 2007, the term "twinks" was detected on the IP address 140.147.143.82 assigned to user profile "MMATHERON".  Further investigation showed that the person using user profile "MMATHERON" routinely accessed child pornographic "internet groups" through Yahoo and Google to include "Crazy For Twink Butts," "Endless-Twinks-n-Things" and "Gayscat."  Investigation also revealed that "MMATHERON" has the capability to receive emails and other Yahoo data via his cellular telephone.

23.  Investigation revealed that Michael John Matheron is an employee at the LOC as a Congressional Research Specialist in the American Law Division.  Further investigation revealed

the LOC computer associated with IP address: 140.147.143.82 is assigned to Matheron, and is located in Matheron's personal workspace.

24.  During the course of this investigation, LOC OIG Special Agents were able to see evidence of Matheron accessing google groups and his Yahoo accounts, which he used to save and upload images of child pornography.  Further investigation revealed that Matheron uses at least one external device to upload images to his Yahoo account (login mfb1949_20901@yahoo.com).

25.  LOC OIG Special Agents  were able to view samples of the images located and saved on Matheron's Yahoo account.  On December 7, 2007, your affiant analyzed the pictures available and confirmed that the pictures consist of images of naked young boys engaging in sexual activity. Further investigation revealed that Matheron has remarried and currently lives with his new wife and a 13 year old stepson. There is also evidence that Matheron has been visiting adoption websites and researching one-time use digital camcorder devices.

## **Conclusion**

26  Based upon the information above, I have probable cause to believe that on the computer systems owned, maintained, and/or operated by Yahoo, Inc. there exists evidence, fruits, and instrumentalities of violations of Title, 18 United States Code, Section 2252A, possession of material constituting or containing child pornography.  By this affidavit and application, I request that the Court issue a search warrant directed to Yahoo allowing agents to seize the e-mail and other information stored on the Yahoo servers for the computer accounts and files and following the search procedure described in Attachment A.


_____
SPECIAL AGENT DONYA JACKSON
LIBRARY OF CONGRESS
OFFICE OF THE INSPECTOR GENERAL


Sworn and subscribed before me
this ____    day of December, 2007


_____
UNITED STATES MAGISTRATE JUDGE

21

**ATTACHMENT A**

## I.  Search Procedure

a.  The search warrant will be presented to Yahoo personnel who will be directed to isolate those accounts and files described in Section II below;

b.  In order to minimize any disruption of computer service to innocent third parties, Yahoo employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Section II below, including an exact duplicate of all information stored in the computer accounts and files described therein;

c.  Yahoo employees will provide the exact duplicate in electronic form of the accounts and files described in Section II below and all information stored in those accounts and files to the agent who serves the search warrant; and

d.  Law enforcement personnel will thereafter review all information and records received from Yahoo employees to determine the information to be seized by law enforcement personnel specified in Section III of Attachment A.

## II.  Files and Accounts to be Copied by Yahoo Employees

a.  All electronic mail stored and presently contained in, or on behalf of, the following electronic mail addresses and/or individual accounts: mfb1949_20901@yahoo.com;

b.  All existing printouts from original storage of all of the electronic mail described above in Section II (a);

c.  All transactional information of all activity of the electronic mail addresses and/or individual accounts described above in Section II(a), including log files, dates, times, methods of connecting, ports, dial-ups, and/or locations;

d.  All business records and subscriber information, in any form kept, pertaining to the electronic mail addresses and/or individual accounts described above in Section II(a), including applications, subscribers' full names, all screen names associated with the subscribers and/or accounts, all account names associated with the subscribers, methods of payment, telephone numbers, addresses, and detailed billing records, alternate e-mail address, registration from IP, date ID registered, and account log in records (last known IP addresses), and

e.  All records indicating the services available to subscribers of the electronic mail addresses and/or individual accounts described above in Section II(a).

22

**III.  Information to be Seized by Law Enforcement Personnel**

a. All electronic mail stored and presently contained in, or on behalf of, the following electronic mail addresses and/or individual accounts: mfb1949_20901@yahoo.com that contains or relates to:

> i.  the possession, distribution, creation, purchase, trade, or sale of child pornography.

b. All existing printouts from original storage of all of the electronic mail described above in Section II (a) of the following electronic mail addresses and/or individual accounts: mfb1949_20901@yahoo that contains or relates to:

> i.  the possession, distribution, creation, purchase, trade, or sale of child pornography.

c.  Any and all electronic file storage associated with mfb1949_20901@yahoo.com.

d.  All records of subscriber account preferences, including, but not limited to, the name and Internet address of any  "favorite places" or "book-marked" websites specified by the user(s) of the accounts, along with any "address books," "buddy lists," or "member profiles" maintained by, or related to, the account(s).

e.  All images and visual depictions, including, but not limited to, .jpeg, .gif, .avi, and .zip files, and all video files, pictures, and photographs, in any way associated with the account and in whatever form stored.

f.  All web-pages, including any posted images and associated links, that were created, maintained or accessed by the user(s) of the above-described account.

g.  All Privacy Preferences.

h.  All of the records and information described above in Sections II(c), (d), and (e).

Copies of the above-described records and stored information should be obtained from original storage and provided on CD-R (CD-Recordable) media.

23